PEOPLE v. SAWYER.

1. Peddlers—Who Are.

One who goes from house to house with rugs, making contracts for leasing them for a specified sum, to be paid in installments, the title to pass when the whole amount of the rental shall have been paid, is a "peddler," within the meaning of an ordinance requiring peddlers to procure a license.

2. Municipal Corporations—Ordinances—Licensing Peddlers—Discrimination.

Under a city charter authorizing the common council to license and regulate hawkers and peddlers, an ordinance requiring peddlers to take out a license may exempt from its operation mechanics and farmers engaged in selling their own products.

3. Same—Constitutional Law—Interstate Commerce.

A municipal ordinance imposing a license fee upon peddlers will not be held invalid, as contravening the interstate commerce provisions of the Federal Constitution (section 8, art. 1), in the case of one who is a resident of this State, and who does not sell goods in the original package, but from a general stock kept within the State.

Certiorari to recorder's court of Detroit; Chapin, J. Submitted June 20, 1895. Decided September 26, 1895.

Joseph B. Sawyer was convicted of peddling without a license, contrary to the provisions of a city ordinance, and sentenced to pay a fine of $8, and, in default, that he be confined in the Detroit house of correction until such

fine should be paid, not exceeding 10 days. Judgment affirmed.

*D. F. Glidden*, for appellant.

*Frank A. Rasch*, City Attorney, for the people.

LONG, J. Respondent was convicted in the recorder's court of the city of Detroit of peddling without a license.

1. It is contended that there is no proof to sustain the verdict. There was proof that he had no license, but the contention is that the business in which he was engaged was not peddling, within the meaning of the charter and ordinances of the city. His business consisted in going from house to house with rugs. His custom was to make contracts of leasing at a certain amount, to be paid weekly, and when the whole amount of rental was paid the title passed to the party renting. On the trial it was shown that the respondent offered the rugs at certain places for sale. The testimony showed that he was employed in the business of hawking and peddling, within the terms of the charter and ordinances. In *Graffty* v. *City of Rushville*, 107 Ind. 506, it was said:

"Any method of selling goods, wares, or merchandise by outcry on the streets or public places in a city, or by attracting persons to purchase goods exposed for sale at such places by placards or signals, or by going from house to house, selling or offering goods for sale at retail to individuals not dealers in such commodities, whether the goods be carried along for delivery presently, or whether the sales are made for future delivery, constitutes the person so selling a hawker or peddler."

The same rule is stated in *Com.* v. *Ober*, 12 Cush. 493; *Davis* v. *Mayor of Macon*, 64 Ga. 134; *State* v. *Hodgdon*, 41 Vt. 139; *City of Chicago* v. *Bartee*, 100 Ill. 61.

2. The charter provides:

"The said council may also license and regulate auctioneers, hawkers, ped llers;  *   *   *   also the peddling or hawking of fruits,  *   *   *  jewelry, merchandise,

goods, and other property whatsoever, by hand, hand-cart, show case, show stand, or otherwise, in the public streets or places." Local Acts 1889, p. 983.

By section 2, tit. 8, of the ordinances of the city of Detroit of 1890, the mayor is authorized to license any citizen to follow the business or occupation of a hawker or peddler, on his paying into the city treasury the sum prescribed by section 3, and executing a bond, etc. Section 3 fixes the amount of the license fee to a peddler on foot at $25. Section 4 of the ordinance provides:

"This ordinance is not intended to apply to any mechanic of this State selling or offering for sale any article of his own manufacture or construction, or to any farmer selling or offering for sale the produce of his own farm."

It is contended that the charter provisions do not authorize the discrimination made by section 4 of the ordinance. The exemption of mechanics, in selling their own manufactured articles, and farmers, in selling the products of their own farms, from the operation of the ordinance, is but following the State statute on the subject of licensing hawkers and peddlers. 3 How. Stat. § 1263. The power given by the charter is to license and regulate hawkers, peddlers, etc. Under this power the common council had authority to impose such reasonable conditions and limitations as it saw fit. 1 Dill. Mun. Corp. § 358, and note. The discrimination in favor of mechanics and farmers in the sale of their products is within the power conferred by the charter upon the common council. These immunities have been recognized for many years. By the statute of 50 Geo. III. c. 41, § 23, real workers or makers of goods within Great Britain were exempt from the payment of the license fee which was imposed upon hawkers and peddlers. *Rex* v. *Faraday*, 1 Barn. & Adol. 275; *Rex* v. *Mainwaring*, 10 Barn. & C. 66. In many if not in most of the American States, these immunities are granted to mechanics and

farmers selling their own products, and the power is not questioned.

3. The claim made that the ordinance violates the provisions of section 8, art. 1, of the Constitution of the United States, providing that Congress shall have the power to regulate commerce among the several States, has no force whatever. The respondent is a resident of this State, and has been for several years. His sales are made from a general stock of goods kept in this State, and he is not selling in the original packages. The testimony in the case clearly shows that the manner of the sales was such as to bring the case out of the interstate commerce provisions of the United States Constitution, over which Congress has exclusive control. *In re Wilson*, 19 D. C. 341; *Com.* v. *Gardner*, 133 Pa. St. 284.

We think the ordinance valid. The judgment must be affirmed.

McGrath, C. J., Montgomery and Hooker, JJ., concurred. Grant, J., did not sit.